Elizabeth M. Peck (USB 6304)
**PECK-LAW, Employment & Civil Rights**
111 N. Market St., Ste. 300
San Jose, California 95113
408-478-3555
lisa@peck-law.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| **CINDY ABERNATHY, individually and on behalf of all persons similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MOLINA HEALTHCARE, INC.,**<br><br>**Defendant.** | **COLLECTIVE ACTION COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Civil No.: 1:20-cv-00042-DBP<br><br>Mag. Judge Dustin B. Pead |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Cindy Abernathy ("Plaintiff" or "Abernathy"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this lawsuit against Molina Healthcare, Inc. ("Molina" or "Defendant"), seeking all available remedies under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA").

The foregoing allegations are made on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

1. Molina is a Managed Care Organization ("MCO") that reaps hundreds of millions of dollars per year in incentive bonuses paid by the Centers for Medicare & Medicaid Services ("CMS"). These bonuses are paid based on material submitted to CMS that reflects certain objective indicators of "quality" healthcare called Healthcare Effectiveness Data and Information Set ("HEDIS") measures. Molina relies on a workforce comprised largely of HEDIS Reviewers and Abstractors (collectively, "HEDIS Reviewers") who regularly work upwards of forty (40) or fifty (50) hours per week to prepare the material ultimately submitted to CMS to determine these bonus payments.

2. This case is above Molina's knowing and improper classification of its HEDIS Reviewers as exempt from the FLSA, who, as a result, did not receive overtime pay for hours regularly worked in excess of forty (40) hours in a workweek.

## JURISDICTION AND VENUE

3. Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. Venue is this Court is proper pursuant to 28 U.S.C. § 1391, since Defendant maintains an office and conducts business in this judicial district, and a

substantial part of the events giving rise to Plaintiff's and Collective Members' claims occurred within this judicial district.

## PARTIES

5. Plaintiff Cindy Abernathy is an individual residing in Nibley, Utah. Abernathy worked for Defendant as a Medical Records Quality Assurance Senior Specialist conducting Healthcare Effectiveness Date and Information Set ("HEDIS") reviews between December 2015 and April 2018. Pursuant to 29 U.S.C. § 216(b), Abernathy has consented in writing to participate in this action. *See* Exhibit A.

6. Defendant Molina Healthcare, Inc. ("Defendant" or "Molina") is a Fortune 500 company "providing managed health care services under the Medicaid and Medicare programs and through the state insurance marketplaces" throughout the United States. Molina Healthcare, Inc., About Molina, Company Information, https://www.molinahealthcare.com/members/common/en-US/abtmolina/compinfo/Pages/compinfo.aspx (last visited February 26, 2020).

7. Defendant maintains its national headquarters at 200 Oceangate, Suite 100, Long Beach, California 90802 and is incorporated in Delaware. Defendant maintains an office at 7050 Union Park Center, Suite 200, Midvale, Utah 84047, and is registered to conduct business in Utah and maintains its Registered Agent at 15 West South Temple, Suite 600, Salt Lake City, Utah 84101.

8. At all times material to this action, Defendant has employed individuals

engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as defined by the FLSA, 29 U.S.C. §§ 206-207.

9. Defendant's annual gross volume of sales made or business done exceeds $500,000.

## FLSA COLLECTIVE DEFINITION

10. Plaintiff brings Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action, individually, and on behalf the following class:

> All individuals who worked for Molina Healthcare, Inc. providing HEDIS reviews in the United States between three years from the filing date of this Complaint and the present and were not paid overtime (the "FLSA Collective").

11. Plaintiff reserves the right to redefine the FLSA Collective prior to notice, and thereafter, as may be warranted or necessary.

## FACTS

12. Defendant contracts with CMS to provide services to Medicare and Medicaid beneficiaries throughout the United States.

13. In an attempt to incentivize "quality" healthcare focused on long-term health outcomes, the Federal Government formalized a system that rewards providers for rendering "quality" care under which CMS offer bonus payments to Molina and other MCOs based on objective indicators of "quality" called HEDIS measures.

14. CMS evaluates "quality" of care objectively on the basis of whether MCOs met or exceeded identifiable, hyper-specific, and standardized performance measures known as HEDIS measures.

15. The Federal Government pays out billions of dollars in "quality" bonuses annually to Defendant and other MCOs that meet or exceed these rigidly-defined HEDIS measures.

16. There are currently 90 HEDIS measures ranging from the frequency with which a primary care physician documents a patient's body mass index to the percentage of patients who receive a flu shot. National Committee for Quality Assurance, HEDIS Measures and Technical Resources, https://www.ncqa.org/hedis/measures (last visited February 26, 2020).

17. HEDIS measures are developed, published, and maintained by the National Committee for Quality Assurance ("NCQA") – an independent, nonprofit organization.

18. Defendant employs hundreds of HEDIS Reviewers to prepare the material necessary for CMS to ultimately determine quality bonus eligibility.

19. MCOs, including Defendant, are rated by CMS on a 5-star scale (known as the "CMS Star Rating Program") that is based, largely, on the number of HEDIS measures that are met or exceeded throughout the provider network in one fiscal year. MCOs earning at least four (4) stars qualify for a bonus.

20. On average, bonuses generate an additional 5% of revenue per member per year. For a 4-star MCO with one (1) million members, this translates to approximately $500 million in bonuses. *See* Kaiser Health News, *Medicare plans scores higher ratings and millions in bonuses, report says*, HEALTHCARE FINANCE, March 8, 2016, www.healthcarefinancenews.com/news/medicare-plans-score-higher-ratings-and-millions-bonuses.

**Plaintiff and Collective Members are Not Exempt Under the FLSA**

21. Plaintiff worked for Defendant as a HEDIS Reviewer between approximately December 2015 and April 2018.

22. Defendant and other MCOs employ HEDIS Reviewers, like Plaintiff, to conduct HEDIS reviews that are submitted to the NCQA for certification before being sent to CMS for review to determine bonus payments.

23. Rote in nature, HEDIS reviews consist of reading through electronic medical records in search of specific pieces of information about members' healthcare which correspond with a specific HEDIS measure, and identifying that objective information already recorded in the members' medical records.

24. For example, a HEDIS Reviewer may spend his or her day identifying in the medical records the last blood pressure reading of the year for dozens of patients in order to report whether a specific HEDIS measure related to blood pressure was met.

25. To complete their job duties, HEDIS Reviewers routinely utilize the "Ctrl-F" search function on their computers to locate specific pieces of information about members' healthcare which correspond with a HEDIS measure.

26. HEDIS Reviewers work remotely and never directly or indirectly engage with patients.

27. To complete HEDIS reviews, HEDIS Reviewers utilize Inovolan software designed for HEDIS review.

28. HEDIS Reviewers are required to submit their HEDIS reviews using the software to their managers.

29. Plaintiff and Collective Members undergo a thirty (30) day peer training and a weeklong training by managers regarding the HEDIS rules.

30. Plaintiff and other HEDIS Reviewers receive explicit instructional materials to complete HEDIS reviews that effectively rendered their job duties clerical to the extent that a layperson without clinical knowledge or training could complete them with minimal training.

31. For example, HEDIS Reviewers receive "HEDIS Technical Specifications" published annually by the NCQA. The HEDIS Technical Specifications contain objective, rigid, and step-by-step instructions for determining whether HEDIS measures were met.

32. HEDIS Reviewers are provided with roadmaps and instructions by

Defendant which address any potential uncertainty about what is or is not compliant with a HEDIS measure.

33. HEDIS Reviewers also receive a database of questions answered by managers and auditors regarding compliance with HEDIS measures. Plaintiff and HEDIS Reviewers could search a key word if they encountered any uncertainty regarding compliance with a HEDIS measure.

34. If the ***exact*** words or data points contained in the HEDIS Technical Specifications or Defendant's supplementary materials are not present in a member's electronic medical records, a HEDIS Reviewer has neither the discretion nor authority to make any interpretations with respect to whether a HEDIS measure is met.

35. If a HEDIS Reviewer has any uncertainty in the process of following the step-by-step instructions in the HEDIS Technical Specifications and cannot locate a precise answer in the supplementary material, Defendant requires HEDIS Reviewers to escalate the question to a manager or review a database of questions answered by auditors who are above HEDIS Reviewers.

36. Reviews completed by Plaintiff and other HEDIS Reviewers were and continue to be subject to oversight and further review. Managers and NCQA auditors routinely had and exercised the authority to review the accuracy of Plaintiff's and other HEDIS Reviewers' work.

37. In fact, before HEDIS Reviews are submitted to CMS to evaluate bonuses payments, a randomized sample of reviews (representative of all reviews) undergo a compliance audit conducted by an NCQA Certified HEDIS Auditor.

38. In virtue of the random sampling, every HEDIS Review must be conducted as if it will be reviewed by the NCQA Certified HEDIS Auditor.

39. In order to ensure that the Federal Government allocates billions of taxpayer money equitably and objectively to MCOs across the United States, CMS relies upon the NCQA to safeguard the review process against any subjectivity and biases which would skew the quality evaluation and inequitably award or withhold bonuses to private corporations.

40. In order to ensure uniformity and to mitigate any shifting standards of HEDIS review which would undermine the credibility of CMS and the Federal Government's underlying mission to promote "quality" healthcare, the NCQA entirely eliminates independent judgment or discretion from the HEDIS review process.

41. HEDIS Reviewers do not exercise or otherwise rely upon any advanced knowledge or experience to complete their job duties.

42. In fact, the exercise of discretion or independent judgement directly interferes with the completion of a proper HEDIS review which is contingent upon total standardization achieved by strictly adhering to the HEDIS Technical

Specifications and supplementary material provided by Defendant.

43. While Plaintiff and other colleagues are Registered Nurses, a nursing degree is not a condition of employment. In fact, some of Plaintiff's colleagues were certified medical coders with no nursing education or experience.

44. Plaintiff's primary duty does not require advanced knowledge and is not predominantly intellectual or scientific in character. Plaintiff's job duties do not require consistent exercise of discretion and judgment.

### Plaintiff and Collective Members Did Not Receive Overtime

45. Plaintiff worked for Defendant as a HEDIS Reviewer between approximately December 2015 and April 2018.

46. During the February to May period known as "HEDIS Review Season," Plaintiff worked five (5) days per week, typically between fifty (50) and sixty (60) hours per week. Plaintiff observed that other Collective Members worked similar schedules.

47. Outside the HEDIS Review Season, Plaintiff worked five (5) days per week, typically between forty (40) and fifty (50) hours per week. Plaintiff observed that other Collective Members worked similar schedules.

48. Plaintiff and Collective Members routinely worked in excess of forty (40) hours per workweek, but were not paid overtime compensation as required by the FLSA.

49. Plaintiff and Collective Members were required to enter eight (8) hours per day on Defendant's electronic time keeping software and were precluded from entering more than 8 hours per day notwithstanding routinely working in excess of 8 hours a day and more than forty (40) hours a week.

50. Although the workload assigned to Plaintiff and Collective Members typically required them to work more than forty (40) hours per week, Defendant failed to pay them one and one-half (1 ½) times their regular rate of pay for hours in excess of forty (40) hours per week, as required by the FLSA.

51. Instead, Plaintiff and Collective Members were misclassified as exempt from the FLSA and paid a salary without overtime compensation.

## Defendant Willfully Violated the FLSA

52. Defendant and its senior management had no reasonable basis to believe that Plaintiff and Collective Members were exempt of the FLSA. Rather, Defendant either knew or acted with reckless disregard for clearly applicable FLSA provisions in misclassifying Plaintiff and the FLSA Collective as exempt and failing to pay them overtime. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendant's actions and/or failures to act.

53. Defendant knowingly, or with reckless disregard, failed to make, keep and preserve records with respect to Plaintiff and other members of the FLSA Collective sufficient to determine their lawful wages, actual hours worked and other

conditions of employment as required by federal and state law. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

54. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

55. Plaintiff desires to pursue her FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

56. Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendant's previously-described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendant's common compensation, timekeeping and payroll practices.

57. Specifically, Defendant misclassified Collective Members as exempt and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

58. The similarly situated employees are known to Defendant and are

readily identifiable and may be located through Defendant's business records and the records of any payroll companies Defendant use.

59. Defendant employs many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

**FIRST CAUSE OF ACTION**
**Violation of the FLSA**
**(On Behalf of Plaintiff and the FLSA Collective)**

60. All previous paragraphs are incorporated as though fully set forth herein.

61. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

62. Defendant is subject to the wage requirements of the FLSA because Defendant is an "employer" under 29 U.S.C. § 203(d).

63. At all relevant times, Defendant was, and continues to be, an

"employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

64. During all relevant times, the members of FLSA Collective, including Plaintiff, were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

65. Plaintiff and the FLSA Collective are not exempt from the requirements of the FLSA.

66. Plaintiff and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

67. Defendant's compensation scheme applicable to Plaintiff and the FLSA Collective failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

68. Defendant knowingly failed to compensate Plaintiff and the FLSA Collective at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

69. Defendant also knowingly failed to create, keep and preserve records with respect to work performed by Plaintiff and the FLSA Collective sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

70. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

71. Pursuant 29 U.S.C. § 216(b), employers, such as Defendant, who fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for the unpaid minimum and overtime wages, an additional equal amount as liquidated damages, reasonable attorney's fees, and costs of the action.

## **CLAIMS FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of herself and all others similarly situated:

   a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

   b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

   c. Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments, and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

   d. Liquidated damages and penalties to the fullest extent permitted under the law;

   e. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

15

  f. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff and the Collective are entitled to a jury.

Dated: April 23, 2020      Respectfully submitted,

            **PECK-LAW,** *Employment & Civil Rights*

            */s/ Elizabeth M. Peck*

            Elizabeth M. Peck

            Sarah R. Schalman-Bergen (PA 206211)
            Camille Fundora Rodriguez (PA 312533)
            Krysten Connon (PA 314190)
            BERGER MONTAGUE PC
            1818 Market Street, Suite 3600
            Philadelphia, PA 19103
            Tel.: (215) 875-3000
            Fax: (215) 875-4604
            sschalman-bergen@bm.net
            crodriguez@bm.net
            kconnon@bm.net

            Harold Lichten (Mass. BBO # 549689)
            Anastasia Doherty (Mass. BBO # 705288)
            LICHTEN & LISS-RIORDAN, P.C.
            729 Boylston St., Suite 2000
            Boston, MA 02116
            Telephone: (617) 994-5800
            Facsimile: (617) 994-5801
            hlichten@llrlaw.com
            adoherty@llrlaw.com

            *Attorneys for the Plaintiff and the Proposed Collective*