Camille Fundora Rodriguez
crodriguez@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604

[Additional Counsel]
*Attorneys for Plaintiff and the Proposed Collective*

CHERYL D. ORR
cheryl.orr@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone:     +1 415 591 7500
Facsimile:     +1 415 591 7510

[Additional Counsel]
*Attorneys for Defendant*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **CINDY ABERNATHY, individually and on behalf of all persons similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MOLINA HEALTHCARE, INC.,**<br><br>**Defendant.** | **STIPULATED MOTION FOR APPROVAL OF THE SETTLEMENT AGREEMENT AND COLLECTIVE COUNSEL'S REQUEST FOR THEIR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**Civil No.:  1:20-CV-00042-DBP**<br>**Judge Dale A. Kimball**<br>**Mag. Judge Jared C. Bennett** |

[Additional Plaintiff's Counsel]
Harold L. Lichten
hlichten@llrlaw.com
Sarah Schalman-Bergen
ssb@llrlaw.com
Krysten L. Connon
kconnon@llrlaw.com
Anastasia Doherty
adoherty@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801


Elizabeth M. Peck
lisa@peck-law.com
PECK-LAW, Employment & Civil Rights
111 N. Market St., Ste. 300
San Jose, California 95113
408-478-3555

[Additional Defendant's Counsel]
JILL A. ZENDER (UBN 5654)
jill.zender@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone:    +1 303 607 3500
Facsimile:    +1 303 607 3600




GREGORY P. ABRAMS
gregory.abrams@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
311 S. Wacker Drive, Suite 4300
Chicago, Illinois  60606
Telephone:    +1 312 212 6500
Facsimile:    +1 312 212 6501




KATRINA WALASIK FORSYTH
katrina.forsyth@faegredrinker.com
KRISTIN M. HALSING
kristin.halsing@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California  90067
Telephone:    +1 310 203 4000
Facsimile:    +1 310 229 1285

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS ......................... 2

III.  THE TERMS OF THE SETTLEMENT AGREEMENT ............................................. 4

      A.    The Settlement Collective Members ............................................................... 4

      B.    Calculation and Distribution of the Settlement Amount .................................. 4

      C.    Release of Claims ......................................................................................... 6

IV.   ARGUMENT ......................................................................................................... 6

      A.    The Proposed FLSA Settlement Meets the Standard for Approval Because it is a Fair and
            Reasonable Resolution of a *Bona Fide* Dispute ............................................... 6

            1.    A *Bona Fide* Dispute Existed Between the Parties ................................. 8

            2.    The Proposed Settlement is Fair and Reasonable ................................ 10

      B.    The Proposed Settlement Furthers the Purpose of the FLSA ......................... 13

      C.    Final Certification of the Settlement Collective is Appropriate ....................... 15

      D.    The Incentive Award to Plaintiff is Justified and Should be Approved ........... 18

      E.    The Request for Collective Counsel's Fees Should Be Approved ................... 20

            1.    Time and Labor Required ..................................................................... 22

            2.    Novelty and Difficulty of Question Presented by the Case, Skill Required to
                  Perform the Legal Service Properly, and Experience of Collective Counsel ...... 23

            3.    Customary Fee and Awards in Similar Cases and Whether the Fee is Fixed or
                  Contingent ......................................................................................... 23

            4.    Any Time Limitations Imposed By the Client or Circumstances ........... 25

            5.    Amount Involved and Results Obtained ................................................ 26

      F.    Collective Counsel's Costs Should Be Approved ........................................... 27

V.    CONCLUSION ..................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alewel v. Dex One Serv.,* Inc.,
    No. 13-2312-SAC, 2013 WL 6858504 (D. Kan. Dec. 30, 2013)............................................. 13

*Baker v. Vail Resorts Mgmt. Co.,*
    No. 13-cv-01649-PAB-CBS, 2014 WL 700096 (D. Colo. Feb. 24, 2014) ................ 7, 8, 10, 13

*Besic v. Byline Bank, Inc*.,
    No. 15-C-8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015)................................................. 11

*Blanco v. Xtreme Drilling & Coil Servs.*,
    Civ. A. No 16-cv-00249-PAB-SKC, 2020 WL 4041456 (D. Col. Jul. 17, 2020) ............. passim

*Bracamontes v. Bimbo Bakeries USA, Inc*.,
    No. 15-cv-02324-RBJ-NYW, 2018 WL 6790171 (D. Colo. Oct. 10, 2018) ....................... 9, 10

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945) ................................................................................................................. 13

*Brown v. Phillips Petroleum Co*.,
    838 F. 2d 451 (10th Cir. 1998)........................................................................................... 21, 26

*Campbell v. C.R. England, Inc.,*
    No. 2:13-CV-00262, 2015 WL 5773709 (D. Utah Sept. 30, 2015) ......................................... 12

*Campbell v. City of Los Angeles*,
    903 F. 3d 1090 (9th Cir. 2018)................................................................................................... 8

*Carr v. Bob Evans Farms, Inc.,*
    No. 1:17-cv-1875, 2018 WL 7508650 (N.D. Ohio July 27, 2018) .......................................... 20

*Cazeau v. Tpusa, Inc.,*
    No. 2:18-cv-00321-RJS-CMR, 2021 WL 1688540 (D. Utah Apr. 29, 2021)...................... 8, 19

*Chieftain Royalty Co. v. Enervest Institutional Fund XIII-A, L.P.,*
    888 F. 3d 455 (10 Cir. 2017)..................................................................................................... 18

*Chieftain Royalty Co. v. Laredo Petroleum, Inc.,*
    2015 WL 2254606 (W.D. Okla. May 13, 2015) ...................................................................... 24

*Collins v. Sanderson Farms, Inc*.,
    568 F. Supp. 2d 714 (E.D. La. 2008) ......................................................................................... 8

*Creed v . Banco Dental Supply Co.*,
    NO. 3:12-CV-01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) ....................................... 20

*Davis v. Crilly*,
    292 F. Supp 3d 1167 (D. Colo. 2018) ......................................................................... 15, 17, 24

*Dees v. Hydradry*,
    706 F. Supp. 2d 1227 (M.D. Fla. 2010) .................................................................................... 13

*Farrar v. Hobby*,
    506 U.S. 103 (1992) ................................................................................................................... 26

*Gambrell v. Weber Carpet, Inc.*,
    No. 10-2131-KHV, 2011 WL 3518172 (D. Kan. Aug. 11, 2011) ............................................. 13

*Gambrell v. Weber Carpet, Inc.*,
    No.10-2131-KHV, 2012 WL 5306273 (D. Kan. Oct. 29, 2012) ............................................... 20

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ................................................................................................................. 8, 23

*Gottlieb v. Barry*,
    43 F. 3d 474 (10th Cir. 1994) .................................................................................................... 21

*Gray v. Phillips Petroleum Co.*,
    971 F. 2d 591 (10th Cir .1992) ................................................................................................. 20

*Gudenkauf v. Stauffer Commc'ns, Inc.*,
    158 F. 3d 1074 (10th Cir. 1998) ............................................................................................... 21

*Henry v. Little Mint, Inc.*,
    No. 12-cv -3966, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ............................................. 24

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................................................... 21

*Heuberger v. Smith*,
    No. 3:16-CV-386JD, 2019 WL 3030312 (N.D. Ind. Jan. 4, 2019)............................................. 7

*In re Qwest Commc'ns Int'l Inc. Sec. Litig.*,
    625 F. Supp. 2d 1133 (D. Co. 2009) ............................................................................ 12, 22, 25

*Johnson v. Ga. Highway Express*, Inc.,
    488 F. 2d 714 (5th Cir. 1974)................................................................................................... 21

*Keel v. O'Reilly Auto Enters., LLC*,
    Case No. 2:17-cv-667, 2018 WL 10509413 (D. Utah, May 31, 2018)............................ 6, 7, 10

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,

No.17-cv-10219-JGD, 2017 WL 6460244, (D. Mass. June 8, 2017) ........................................ 7

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ........................................................................................ 11, 12

*Lucken Family Ltd. P'ship v. Ultra Res., Inc.*,
  No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) .................... 21, 24

*Lynn's Food Stores v. U.S.*,
  679 F. 2d 1350 (11th Cir. 1982) ........................................................................................ 6, 7, 8

*Marcus v. Kansas Dept. of Revenue*,
  209 F. Supp. 2d 1179 (D. Kan. 2002) ........................................................................................ 13

*McCaffrey v. Mortg. Sources, Corp.*,
  No 08-2660-KHV, 2010 WL 4024065 (D. Kan. Oct. 13, 2010) ............................................. 13

*McLaughlin v. Richland Shoe Co*,
  486 U.S. 128 (1988) ........................................................................................................................ 10

*McNeely v. Nat'l Mobile Health Care*, LLC,
  NO. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ..................................... 20

*Oh v. AT&T Corp.*,
  225 F.R.D. 142 (D. N.J. 2004) ........................................................................................................ 27

*Osman v. Grube, Inc.*,
  No. 3:16-cv-00802-JJH, 2018 WL 2095172 (N.D. Ohio May 4, 2018) ..................................... 7

*Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*,
  No. 2:02-CV-950, 2014 WL 3943994 (D. Utah June 19, 2014) ............................................... 24

*Peterson v. Morg. Sources, Corp.*, No. 08-2660-KHV,
  2011 WL 379363 (D. Kan Aug. 25, 2011) ............................................................................... 21

*Pliego v. Los Arcos Mexican Rests., Inc.*,
  313 F.R.D. 117 (D. Colo. 2016) ...................................................................................................... 7, 12

*Raniere v. Citigroup, Inc.*,
  310 F.R.D. 211 (S.D.N.Y. 2015) ................................................................................................... 20

*Robles v. Brake Masters Sys., Inc.*,
  No. CIV 10-0135 JB/WPL, 2011 WL 9717448 (D.N.M Jan. 31, 2011) ................................... 6

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F. 3d 1180  (10th Cir. 2002) ..................................................................................................... 10

*Shaw v. Interthinx, Inc.*,
  No. 13-cv-01229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ................................... 19, 24, 25

*Slaughter v. Sykes*,
    No. 17-cv-529512, 2019 WL 529512 (D. Colo. Feb. 11, 2019) ........................................ 13, 19

*Stransky v. HealthONE of Denver, Inc.*,
    868 F. Supp. 2d 1178 (D. Colo. 2012) .................................................................................. 25

*Swigart v. Fifth Third Bank*,
    1:11-cv-88, 2014 WL 3447947, (S.D. Ohio July 11, 2014) .................................................... 20

*Tennille v. W. Union Co.*,
    785 F. 3d 422 (10th Cir. 2015) ............................................................................................. 10

*Tennille v. W. Union Co.*,
    No. 09-cv-00938-JLK-KMT, 2013 WL 6920449 (D. Colo. Dec. 31, 2013) ........................... 24

*Thiessen v. Gen Elec. Capital Corp.*,
    267 F. 3d 1095 (10th Cir. 2001) ........................................................................................... 15

*Tuten v United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014) ............................................................................... 19, 27

*UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v Newmont Min. Corp.*,
    352 Fed. Appx. 232 (10th Cir. 2009) .................................................................................... 18

*Uselton v. Com. Lovelace Motor Freight, Inc.*,
    9 F. 3d 849 (10th Cir 1993) ............................................................................................ 20, 22

*Wade v. Werner Trucking Co.*,
    No. 2:10-CV270, 2014 WL 2535226 (S.D. Ohio June 5, 2014) ............................................. 15

*Wells v. Sullivan*,
    907 F. 2d 367 (2d Cir. 1990) ................................................................................................ 25

*Whittington v. Taco Bell of*,
    *Amer.* No. 10-cv-01884-KMT-MEH, 2013 WL 6022972 (D. Colo. Nov 13, 2013) .......... 22, 24

## Statutes

29 U.S.C. § 201 ...................................................................................................................... 2

29 U.S.C. § 202 ..................................................................................................................... 13

29 U.S.C. § 255(a) ................................................................................................................. 25

29 U.S.C.§ 216(b) ........................................................................................................... passim

## Rules

Fed. R Civ. P. 23 .............................................................................................................. 10, 16

## I.    __INTRODUCTION__

This wage and hour lawsuit filed by Plaintiff Cindy Abernathy ("Plaintiff") against Defendant Molina Healthcare, Inc. ("Molina" or "Defendant")[1] has been settled subject to this Court's approval. The Parties respectfully move the court for an Order: (i) approving the Parties' Settlement Agreement[2] and finding that this settlement is a fair and reasonable resolution of a *bona fide* dispute; (ii) certifying the Settlement Collective as a collective action for purposes of settlement pursuant to 29 U.S.C.§ 216(b); (iii) approving the Incentive Payment to Plaintiff; (iv) approving Collective Counsel's requests for attorneys' fees and costs; (v) barring any claims released by the Settlement Agreement by Plaintiff and any member of the Settlement Collective who participates in the settlement as set forth in the Settlement Agreement; and (vi) dismissing the litigation and all claims in the litigation with prejudice, while still retaining jurisdiction to implement and enforce the terms of the Settlement Agreement and to accept the filing of the opt-in consents who timely cashed their settlement checks, pursuant to the process set forth in the Settlement Agreement. The grounds for this motion are that the Settlement Agreement was reached after extensive arm's length negotiations with the assistance of an experienced mediator and the terms of the Settlement Agreement are fair and reasonable.

Plaintiff alleged that Molina has a policy and practice of misclassifying employees who held the title "Sr. Specialist, HEDIS/Quality Reporting" or "Sr. Abstractor, HEDIS/Quality Improvement" (collectively, "HEDIS Reviewers") as exempt from overtime compensation, resulting in failure to pay them overtime for hours worked in excess of forty (40) hours per week,

---

[1] Defendant Molina and Plaintiff Abernathy are collectively referred to herein as the "Parties."
[2] Unless otherwise identified, capitalized terms have the meaning ascribed to them in the Parties' Settlement Agreement.

in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Defendant continues to deny this and all other related allegations and disputes any liability.  Defendant also disputed that a collective action was warranted under 29 U.S.C. § 216(b). Following arm's length negotiations, including a day-long remote mediation session with experienced mediator Michael Dickstein, the Parties reached an agreement to settle the matter. The terms of the Parties' settlement are set forth in the Settlement Agreement (which includes its exhibits), attached as Exhibit A to this Motion. The settlement provides for a Total Settlement Amount of $1,750,000.00, which includes all settlement payments to Plaintiff and the Settlement Collective, Collective Counsel's fees and costs, Settlement Administration Costs and an incentive award to Plaintiff for her efforts on behalf of the proposed Settlement Collective, in exchange for the Settlement Collective members' release of claims against Defendant and Plaintiff's general release of claims against Defendant, as set forth in the Settlement Agreement and discussed further below.

Collective Counsel believe that the negotiated Settlement Agreement provides an excellent resolution of this litigation, especially when considering that the litigation, if not settled now, might result in no recovery or a less favorable recovery. Defendant's Counsel likewise believes that the Settlement Agreement is a favorable outcome considering in particular the costs and uncertainty of ongoing litigation.  The Parties respectfully request that the Court approve the Settlement Agreement as fair and reasonable and enter the attached Order.

## II.        PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

On April 23, 2020, Plaintiff, who worked for Molina as a Sr. Specialist, HEDIS/Quality Reporting and Sr. Abstractor, HEDIS/Quality Improvement conducting HEDIS[3] reviews, filed a

---

[3] "HEDIS" is an acronym for "Healthcare Effectiveness Data and Information Set" measures. *See*

Collective Action Complaint in this Court against Defendant, alleging that she and other similarly situated HEDIS Reviewers were misclassified as "exempt" from the FLSA's overtime requirements, thereby allegedly resulting in unpaid overtime compensation in violation of FLSA. (Dkt. No. 2.) On June 2, 2020, Defendant filed its Answer to Collective Action Complaint denying Plaintiff's allegations and asserting various defenses. (Dkt. No. 27). On June 9, 2020, pursuant to § 216(b) of the FLSA, Plaintiff Ja'Net Wall ("Wall") filed a consent form with the Court to join the lawsuit. (Dkt. No. 35). The Parties subsequently engaged in written discovery, including document production.

On February 1, 2021, the Court approved the Parties' stipulation to engage in mediation and to stay the matter. (Dkt. No. 40). On April 5, 2021, the Parties participated in an intensive full-day remote mediation session with Michael Dickstein, an experienced wage and hour mediator, at which the Parties reached an agreement in principle to settle the litigation, as set forth in a memorandum of understanding executed by the Parties. Prior to the mediation, Defendant provided Collective Counsel with Molina's payroll information for all individuals for the time period April 23, 2017 to March 13, 2021 (the "Relevant Period") holding the title of "Sr. Specialist, HEDIS/Quality Reporting" or "Sr. Abstractor, HEDIS/Quality Improvement" and classified as exempt, which Collective Counsel reviewed and analyzed extensively. As a result of the mediation and continued arm's length negotiations, the Parties agreed to settle the claims according to the terms of their Settlement Agreement.

---

Compl. at ¶¶1, 5, Dkt. No. 2.

III.        **THE TERMS OF THE SETTLEMENT AGREEMENT**

A.        **The Settlement Collective Members**

Under the Settlement Agreement, the "**Settlement Collective**" means all current or former employees who worked for Molina and held the title "Sr. Specialist, HEDIS/Quality Reporting" or "Sr. Abstractor, HEDIS/Quality Improvement" and were classified as exempt, between April 23, 2017 and March 13, 2021. Agreement ¶ A.15. There are approximately 136 members of the Settlement Collective, and Plaintiff has relied on the records produced by Defendant in negotiating the Settlement Agreement. *Id.* The Parties have stipulated and agreed that, for settlement purposes only, certification of the Settlement Collective as an FLSA collective under 29 U.S.C.§ 216(b) is appropriate. *Id.* at ¶ B.1. Each member of the Settlement Collective will be fully advised of this settlement with the Notice of Settlement of Collective Action Lawsuit ("Notice") attached as Exhibit 2 to the Settlement Agreement.

B.        **Calculation and Distribution of the Settlement Amount**

Pursuant to the terms of the Settlement Agreement, Defendant will pay into the qualified settlement fund established by the Settlement Administrator the Total Settlement Amount of $1,750,000.00. *Id.* at ¶ B.2.a. After deducting the agreed-upon amounts for Collective Counsel's attorneys' fees (one-third of the Total Settlement Amount, or $583,333,33), out-of-pocket costs ($14,387.98), an incentive award to Plaintiff ($10,000.00), and settlement administration costs ($14,000), all subject to Court approval, the remaining amount will be $1,128,278.69, which constitutes the "Settlement Pool." *Id.* at ¶ A.16., B.2.b.[4] The Settlement Pool will be distributed

---

[4] In addition to the Total Settlement Amount, Defendant will pay the employer's share of the payroll taxes on that portion of the Total Settlement Amount that constitutes unpaid wages, as well as Defendant's own attorneys' fees and costs. *Id.* at ¶¶ A.17, B.9.e.

*pro rata* to the Settlement Collective under an allocation formula that credits individuals with settlement shares for each workweek during which he or she worked at any time between April 23, 2017 and March 13, 2021, in addition to a *minimum* payment of $100 per Settlement Collective member. *Id.* at ¶¶ B.3.a-b (describing allocation formula).[5] Upon court approval, the Settlement Administrator will mail the settlement award checks accompanied by the Notice pursuant to the schedule and according to the processes set forth in the Settlement Agreement. *Id.* at ¶ 8.d.

All settlement checks will be valid and negotiable for a period of 180 days from the date the checks are issued, and the Settlement Administrator will send a reminder letter via U.S. mail and email to those who have still not cashed their checks after 60 days. *Id.* ¶ B.8.k. Any amounts from uncashed settlement checks remaining after the 180-day period will be paid back to Defendant in recognition of the fact that those who do not cash their checks do not release any claims against Defendant. *Id.* ¶ B.8.l. Settlement Collective members need not submit a claim form to participate in the settlement.

Finally, no later than 15 days after the close of the 180-day check cashing period, the Settlement Administrator will provide all Counsel a list of the Settlement Collective members who cashed their settlement checks and copies of the associated settlement checks.  *Id.* at ¶¶ B.8.o. Collective Counsel will be responsible for filing opt-in consents with the Court, with the settlement amounts in the checks redacted, by no later than 30 days after the close of this 180-day period. *Id.*

---

[5] For tax purposes, 50% of the amount paid to each Settlement Collective member will be considered back wages subject to withholding taxes and reported on a W-2, and the remaining 50% will be considered liquidated damages, penalties, interest, and other non-wage income subject to an IRS Form 1099, not subject to withholding taxes. As part of their functions, the Settlement Administrator will be responsible for tax withholding, remittance, and reporting requirements to the appropriate governmental authorities. *Id.* at ¶¶ B.4, B.9.a.b.

at ¶¶ 8.p.-q.

C.     Release of Claims

In exchange for settlement benefits, those members of the Settlement Collective who sign,

deposit, and/or cash their settlement award check shall release:

> any and all wage and hour claims raised in the Litigation, including without
> limitation all claims for overtime compensation, liquidated damages, attorneys'
> fees/costs, and interest under the FLSA from April 23, 2017, through the date of
> execution of the Settlement Agreement, against the Releasees.[6]

*Id.* at ¶¶ A.11., B.10.a. Settlement Collective members will not release any claims unless they

timely sign, deposit, or cash their settlement award check. *Id.* at ¶ B.10.a. In addition, and in

consideration for her Incentive Payment, Plaintiff Abernathy will provide a broader release to the

Releasees. *Id.* at ¶ B.10.b.

IV.     **ARGUMENT**

A.     **The Proposed FLSA Settlement Meets the Standard for Approval Because it
is a Fair and Reasonable Resolution of a *Bona Fide* Dispute**

Courts have held that collective action settlements under the FLSA must be approved by

the district court. *Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL

9717448, at *18 (D.N.M Jan. 31, 2011) (citing *Lynn's Food Stores v. U.S.*, 679 F. 2d 1350, 1354

(11th Cir. 1982); *accord Keel v. O'Reilly Auto Enters., LLC,*, Case No. 2:17-cv-667, 2018 WL

10509413, at *2 (D. Utah, May 31, 2018) (following the approach of district courts in Utah and

Tenth Circuit finding "judicial approval necessary"). The standard for approval of an action arising

---

[6] The "Releasees" are Molina and its current, former, and future affiliates, parents, subsidiaries, related entities, predecessors, successors, divisions, joint ventures, assigns, and its and their current and former officers, directors, shareholders, employees, agents, partners, members, principals, insurers, co-insurers, re-insurers, benefit plans, attorneys, and personal or legal representatives, in their individual and corporate capacities. Agreement ¶ A.12.

under the FLSA requires only a determination that the proposed settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 127-128 (D. Colo. 2016) (citing *Lynn's Food Stores*., 679 F. 2d at 1355). To approve an FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; (2) the proposed settlement is fair and equitable to all parties; and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Baker v. Vail Resorts Mgmt. Co.,* No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores,* 679 F. 2d at 1354); *accord Keel,* 2018 WL 10509413, at *2. As discussed below, these factors are satisfied here.

Further, because there are no Rule 23 class claims in this case, Rule 23 does not apply, and the Court may grant approval to the FLSA settlement via a one-step process, without holding a final fairness hearing. *See* 29 U.S.C. § 216(b).[7] That is because, in contrast to Rule 23 class settlement procedures where potential class members are automatically bound by the settlement unless they actively opt-***out,*** in a collective action under 29 U.S.C. § 216(b), eligible collective

---

[7] *See, e.g*., *Heuberger v. Smith*, No. 3:16-CV-386JD, 2019 WL 3030312, at *2 (N.D. Ind. Jan. 4, 2019) ("'A one-step settlement approval process is appropriate' in FLSA collective actions" meaning that "the Court can review and approve the settlement agreement without holding a final fairness hearing or adhering to the other requirements contained in Rule 23.") (citation omitted) (citing Bloomberg BNA, *The Fair Labor Standards Act,* 17.X.D (3d ed. 2017) ("In cases that only present FLSA claims, a fairness hearing is not required. A collective action settlement may be brought to the court on a single motion to approve the settlement and enter a stipulated judgment.")); *Osman v. Grube, Inc.,* No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) ("one-step approval process in FLSA collective actions is appropriate" because "the failure to opt into an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future") (collecting cases); *Lauture v. A.C. Moore Arts & Crafts, Inc*., No.17-cv-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) ("A one-step approval process is appropriate in FLSA settlements that do not include proposed [] [Rule] 23 class releases.") (collecting cases in various circuits).

members must affirmatively "opt-*in*" to be bound by the Settlement and release their FLSA claims. Settlement Collective members do so here by depositing or cashing their settlement award check.[8] "The primary focus of the [c]ourt's inquiry in determining whether to approve the settlement of a[n] FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, …but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Cazeau v. Tpusa, Inc.,* No. 2:18-cv-00321-RJS-CMR, 2021 WL 1688540, at *2 (D. Utah Apr. 29, 2021) (citing *Collins v. Sanderson Farms, Inc*., 568 F. Supp. 2d 714, 719 (E.D. La. 2008)) (citations omitted).

### 1. A *Bona Fide* Dispute Existed Between the Parties

Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute…" 679 F. 2d at 1354. "To meet this obligation, the parties must present (1) a description of the nature of the dispute; (2) a description of the employer's business and type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Baker*, 2014 WL 70096 at *1 (citing *Collins.,* 568 F. Supp. 2d at 718).

Here, Plaintiff alleged that Defendant's compensation practices resulted in misclassifying

---

[8] *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *Campbell v. City of Los Angeles*, 903 F. 3d 1090, 1112 (9th Cir. 2018) ("[t]he limited statutory requirements of a collective action are 'independent of, and unrelated to, the requirements for class action under Rule 23'") (citation omitted).

Plaintiff and other allegedly similarly situated HEDIS Reviewers as exempt and failing to pay them overtime compensation for all hours worked over forty in a workweek. *See* Compl. at ¶¶ 21-53. Molina's primary business includes providing managed care services under the Medicare and Medicaid programs, and Molina employed Plaintiff and the Settlement Collective members as HEDIS Reviewers to prepare material submitted to the Centers for Medicare and Medicaid Services. Compl. at ¶¶ 1,6,18. Defendant denied the allegations of misclassification and unpaid overtime, denied that a collective action was appropriate, and asserted numerous defenses that it believes would defeat Plaintiff's claims in whole or in part. *See generally* Answer, Dkt. No. 27. Accordingly, a *bona fide* dispute over FLSA provisions exists here. *See Bracamontes v. Bimbo Bakeries USA, Inc*., No. 15-cv-02324-RBJ-NYW, 2018 WL 6790171, at *2 (D. Colo. Oct. 10, 2018) (finding settlement resolved a "*bona fide* dispute" where "Plaintiffs argued that they were non-exempt employees within the meaning of the FLSA and were therefore entitled to overtime" while "[d]efendant believes the opposite and indeed classified Plaintiffs and other putative opt-in plaintiffs as exempt from the FLSA's protections").

During the course of discovery and settlement negotiations, Defendant produced compensation data regarding proposed members of the Settlement Collective, which Collective Counsel carefully analyzed. In addition to disagreeing about whether overtime was owed under the FLSA, the Parties also disagreed on the appropriate formula for calculating damages in the event Plaintiff prevailed on establishing liability. The Parties also disagreed about whether a collective action should be conditionally certified under Section 216(b) of the FLSA and, if the Court were to grant conditional certification, whether such a collective should later be decertified. Even if Plaintiff prevailed on liability, Molina asserted that Plaintiff would not be able to

demonstrate that the violation was a "willful violation," such that Plaintiff would only be able to recover under a two-year statute of limitations period. *See McLaughlin v. Richland Shoe Co,* 486 U.S. 128, 133 (1988). Ultimately, the Total Settlement Amount that the Parties reached reflects what Collective Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiff would face if the case proceeded further.

### 2.    The Proposed Settlement is Fair and Reasonable

"To be fair and reasonable an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Keel,* 2018 WL 10509413 at *3 (citation omitted). "Normally a settlement is approved where it is the result of contentious arm's length negotiations, which were undertaken in good faith by counsel… and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief…" *Bracamontes*, 2018 WL 6790171 at *2 (citation omitted).

Because the Tenth Circuit has not definitively set out specific FLSA criteria to use when assessing the fairness and reasonableness of a proposed settlement, district courts have looked to the same factors used in evaluating the fairness of a class action settlement under Fed. R Civ. P 23(e). *Baker,* 2014 WL 700096 at *2. These factors are:

> 1) whether the parties fairly and honestly negotiated the settlement; 2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; 3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and 4) the judgment of the parties that the settlement is fair and reasonable.

*Id.* (citing *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F. 3d 1180 1188 (10th Cir. 2002)); *accord Tennille v. W. Union Co.,* 785 F. 3d 422, 434 (10th Cir. 2015).

Here, the settlement reached provides Settlement Collective members with the recovery of

alleged unpaid overtime hours worked, and was carefully negotiated based on factual discovery, substantial investigation by Collective Counsel, and the review and analysis of pay data produced by Molina in preparation for mediation, and after arm's length negotiations. *See* Declaration of Camille Fundora Rodriguez ("Rodriguez Decl.") at ¶¶ 13-15. The Total Settlement Amount is a negotiated amount that reflects Plaintiff's calculated potential damages relative to the risk of continued litigation. *Id.* at ¶ 17.  Further, the settlement awards to Settlement Collective members will be calculated and distributed pursuant to a proposed allocation formula that is based on an analysis of workweeks during which Settlement Collective members worked for Molina at any time between April 23, 2017 and March 13, 2021, which is based on data provided by Defendant (Agreement ¶ B.3.b.,d.), and is fair and reasonable.[9] *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quotation and citation omitted).

Further, a trial on the merits would involve significant risks for Settlement Collective members given the disputed serious questions of law and fact in the case, including - as in any FLSA case - the risk that the Settlement Collective members would not succeed in obtaining and then maintaining a collective through trial. While Plaintiff believes the case was very strong, the outcome of the litigation is far from certain, and, if not settled, would require significant factual development, and would be subject to the risk that even a favorable verdict at trial could be delayed

---

[9] *See, e.g., Besic v. Byline Bank, Inc*., No. 15-C-8003, 2015 WL 13763028, at *1 (N.D. Ill. Oct. 26, 2015) (allocation formula based on number of weeks that particular person worked as percentage of total number of weeks worked by all potential class members during the relevant time period "is a reasonable way of apportioning the settlement among the collective members").

based on any appeals by Defendant. The likely risks, complexity, delay and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial relief presented by this excellent settlement. Rodriguez Decl. ¶¶ 18-20. *See Pliego*, 313 F.R.D. at 131 ("[G]iven the inherent risks associated with further ligation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation."); *In re Qwest Commc'ns Int'l Inc. Sec. Litig.,* 625 F. Supp. 2d 1133, 1138 (D. Co. 2009) (settlement "eliminates doubt, meaning the possibility of no recovery after long and expensive litigation").

As to the fourth factor, the Parties, represented by experienced counsel, and with the assistance of experienced mediator Michael Dickstein, ultimately agreed to this settlement as a fair and reasonable resolution of the action. *Campbell v. C.R. England, Inc.,* No. 2:13-CV-00262, 2015 WL 5773709, at *5 (D. Utah Sept. 30, 2015) (approving settlement as "fair and reasonable" where it is "'the product of negotiation between represented parties' during private mediation, which supports a finding that it 'did not come about because of overreaching by the employer.'") (internal citations and quotations omitted). Collective Counsel are experienced and respected class and collective action litigators, including in the area of employment law. Rodriguez Decl. ¶¶ 2-5, Ex. A, Firm Resume; Declaration of Sarah Schalman-Bergen ("Schalman-Bergen Decl.") ¶¶ 3-11. Based on Collective Counsel's knowledge and expertise, they believe this settlement will provide a substantial benefit to the Settlement Collective. Rodriguez Decl. ¶¶ 15, 18, 20; Schalman-Bergen Decl. ¶ 13. Defendant's Counsel likewise believes that this settlement is a favorable resolution for Defendant relative to the costs and risks of further litigation. "Counsel's judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas,* 234 F.R.D. at 695 (quoting

*Marcus v. Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002). Accordingly, these factors support approval of the settlement as fair and reasonable.

**B.     The Proposed Settlement Furthers the Purpose of the FLSA**

The Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Such contradictions or frustrations include, from Collective Counsel's perspective, filing the settlement agreement under seal and confidentiality agreements of the settlement.[10] Indeed, the settlement further the purposes of the FLSA by providing Plaintiff and the Settlement Collective members with substantial recovery of their alleged unpaid overtime, that they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency…"). Importantly, all Settlement Collective members will automatically receive a settlement award without having to file a claim form and will not release any claims

---

[10] *See, e.g., Alewel v. Dex One Serv.,* Inc. No. 13-2312-SAC, 2013 WL 6858504, at *2 (D. Kan. Dec. 30, 2013) ("[T]he public's interest in understanding disputes and trusting courts as fairly and honestly run 'outweighs any interest of the parties in keeping confidential the amount of settlement.'") (quoting *Gambrell v. Weber Carpet, Inc.,* No. 10-2131-KHV, 2011 WL 3518172, at *1-2 (D. Kan. Aug. 11, 2011); *McCaffrey v. Mortg. Sources, Corp.,* No 08-2660-KHV, 2010 WL 4024065, at *2 (D. Kan. Oct. 13, 2010) (same); *Baker*, 2014 WL 700096 at *2 (noting the importance of public access to settlement agreements in FLSA cases) (citing *Dees v. Hydradry*, 706 F. Supp. 2d 1227, 1244-45 (M.D. Fla. 2010); *Slaughter v. Sykes,* No. 17-cv-529512, 2019 WL 529512, at *7 (D. Colo. Feb. 11, 2019) (settlement agreement complies with the purpose of the FLSA because of the "presence of other similarly situated employees" who would be unlikely to sue without a collective action, and "does not contain a "confidentiality agreement" and "will be publicly filed on the Court's electronic docket") (citing *Dees*, 706 F. Supp. 2d at 1244).

*unless* they cash their check. Agreement ¶ B.10.a; Rodriguez Decl. ¶ 15. Because the Settlement advances the goals of the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

Moreover, the Settlement Collective members will receive the proposed Notice with their settlement award check. Agreement ¶ B.8.d. The Agreement provides what Plaintiff believes is the fairest and most practicable procedure and form of Notice for notifying Settlement Collective members of the terms of and their respective rights under the Settlement Agreement. Pursuant to the schedule set forth in the Settlement Agreement, Defendant will provide the Settlement Administrator with a data file for the Settlement Collective that identifies all Settlement Collective members' names and (where available) their last known address, telephone numbers, personal email address, workweek data and other information to effectuate the settlement efficiently and accurately.[11]

The proposed Notice, which is attached to the Settlement Agreement as Exhibit 2, is clear and straightforward, and provides information regarding the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the settlement will provide to Settlement Collective members, the allocation method, the scope of the release, the request for an incentive award for the named Plaintiff, the request for attorneys' fees and costs, the deadline for cashing the settlement check, and their rights should they not cash the check. *See Id*. Ex. A. *See,*

---

[11] Before mailing the Settlement Notice and settlement check, the Settlement Administrator will make reasonable efforts to obtain valid, current addresses, including through the U.S. Postal Service's National Change of Address database and other third-party databases to obtain forwarding addresses. If the Settlement Notice and check are returned as undeliverable after the initial mailing, the Settlement Administrator and will use reasonable steps to search for more recent addresses to promptly re-mail Notices and checks to the correct address. Agreement ¶¶ 8.f, i.

*e.g., Wade v. Werner Trucking Co*., No. 2:10-CV270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving a settlement notice which included the same type of information proposed in this case, as "fully and accurately inform[ing] the FLSA Collective Members of all material elements of the Litigation and the Agreement").

### C.    Final Certification of the Settlement Collective is Appropriate

The Court should also finally certify the collective as meeting the "similarly situated" requirement under 29 U.S.C § 216(b) for settlement purposes only. Although the FLSA does not define "similarly situated," the Tenth Circuit has followed a two-step approach to determine, "on an *ad hoc* case-by-case basis" whether collective members are "similarly situated" within the meaning of section 216(b) of the FLSA, which is "not tied to the Rule 23 standards." *Thiessen v. Gen Elec. Capital Corp.,* 267 F. 3d 1095, 1102, 1105 (10th Cir. 2001). At the first stage, before discovery is completed, the burden is "lenient." At the second stage, which may be prompted by a motion to decertify the collective, the court considers several factors, including: (1) "[the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1103. Similarly, "[f]inal certification for *settlement* purposes requires the Court to determine whether the settlement class members are similarly situated" by applying these same three "second stage" *Thiessen* factors. *Davis v. Crilly*, 292 F. Supp 3d 1167, 1171-72 (D. Colo. 2018) (citing *Thiessen*, 267 F. 3d at 1105) (emphasis added). These factors are satisfied here.

Plaintiff alleges that the HEDIS Reviewers all worked under the same conditions and compensation policies, all had similar job duties and responsibilities and were all subject to Molina's same alleged policy of misclassifying them as exempt employees, thereby failing to pay

15

them overtime for hours worked in excess of 40 hours per week. Further, with respect to this settlement, fairness and procedural concerns counsel in favor of final certification, which will enable the approximately 136 Settlement Collective members to receive compensation for their alleged unpaid overtime without the need to file individual actions.

In addition, because this settlement resolves only FLSA claims on behalf of a Settlement Collective, the due process concerns and procedure for approval of class action settlements under Fed. R Civ. P. 23 do not apply, such that the Court may approve this settlement, finally certify the Settlement Collective for purposes of settlement, and authorize that Notice be sent to Settlement Collective members with their settlement awards in a "one-step" settlement approval process. As discussed above at Section IV.A, *supra*, when FLSA-only claims are settled on a collective basis, courts have implemented a one-step approach to approve the settlement and certify the collective pursuant to 29 U.S.C.§ 216(b) for purposes of settlement only.

Courts in this Circuit as well have implemented a one-step approach when certifying an FLSA collective for purposes of settlement and have approved a similarly structured settlement, *i.e.,* a one-step approval and certification process like this one, where members of the Settlement Collective are sent a Notice of the settlement enclosing their award check, and they do not release their claims *unless* they cash their settlement check. For example, in *Lopez v. T/J Inspection, Inc.,* Case No. CIV-16-148-M (W.D. Okla. April. 12, 2017) the district court found that the parties' proposed settlement represented a fair and reasonable resolution of a *bona fide* dispute, and further ordered that "Plaintiff's FLSA collective action…is hereby dismissed with prejudice against Defendant in accordance with the terms of the Settlement Agreement." Ex. B, Order & Judgment (Dkt. 59) at p. 2.

In *Davis,* 292 F Supp. 3d 1167, the District of Colorado granted "final certification for settlement purposes" to two classes of employees under the FLSA even though "there was no conditional certification or notice stage in [the] case," because the settlement contained "procedural protections." *Id.* at 1171. First, the court found settlement class members were "similarly situated" under the three-pronged *Thiessen* standard, because "Plaintiffs' claims and pertinent employment duties were substantially similar," Defendants' denial that their pay policy was illegal applied equally to all Plaintiffs, and "fairness and procedural considerations – such as allowing Plaintiffs to pool their resources for litigation" favored collective treatment. *Id.* In addition, although the settlement was limited to those who had previously opted into the lawsuit, the court noted they may not have been given the opportunity to actually review and possibly object to the final subsequent *settlement* of the lawsuit. Notably, however, the court still found that final certification was warranted because the settlement provided "another layer of protection" "in the event that any Plaintiffs do not agree" to the Settlement. *Id* at 1172. "Specifically, any plaintiff that does not agree [to the Settlement] may elect not to deposit his settlement check; if he does so, he will retain all rights under the FLSA, as if he had never joined into this case, *i.e.* his claims will be dismissed without prejudice." *Id*. In view of these protections and satisfaction of the factors set forth in *Thiessen,* the court granted "final collective action certification" to the settlement. *Id*.

Here, too, participation in the settlement is purely voluntary - the proposed Notice makes clear that only Settlement Collective members who cash or deposit their settlement check will release their claims and that Collective Counsel will file copies of the cashed checks with the settlement amounts redacted. Agreement ¶¶ B.8.o., 10.a.[12]

---

[12] Beginning two weeks after mailing the Settlement Notice and checks, the Settlement

For the foregoing reasons, the Parties respectfully request that the Court find that the Settlement Collective members are for purposes of this settlement "similarly situated" and finally certify the Settlement Collective pursuant to 29 U.S.C. § 216(b) for settlement purposes only.

### D.   The Incentive Award to Plaintiff is Justified and Should be Approved[13]

The settlement provides for an incentive award to Plaintiff in the amount of $10,000.00, in recognition of her efforts in bringing and prosecuting this matter on behalf of the proposed Settlement Collective. She will also provide a broader release against Defendant. Agreement ¶¶ B.5.a., 10.b. Subject to Court approval, this amount will be paid in addition to Plaintiff's award from the Settlement Pool as a member of the Settlement Collective under the Agreement.

Courts routinely approve service awards to compensate named plaintiffs for the "personal risk incurred or additional effort and expertise provided for the benefit of the class." *UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v Newmont Min. Corp*., 352 Fed. Appx. 232, 235 (10th Cir. 2009); *see also Chieftain Royalty Co. v. Enervest Institutional Fund* XIII-A, L.P., 888 F. 3d 455, 468 (10 Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case."). Factors to be considered include: "(1) the actions that the class representative took to protect the interests of the

---

Administrator will provide to the Parties' counsel a bi-weekly status report on the total number and dates that checks were sent, the number and dates of Notices returned as undeliverable, and efforts made to locate a new address, and dates re-sent, and total number of checks cashed and amounts of each cashed check. Collective Counsel will file with the Court copies of settlement award checks for Settlement Collective members who cashed their settlement checks and thereby opted-into the settlement and released their claims. Agreement ¶ 8.g.j. The filing of the checks effectively serves to satisfy §216(b)'s requirement to file a written consent with the court.

[13] The requests for approval of the Plaintiff's Incentive Payment and of Collective Counsel's fees and costs, set forth in Sections D through F, are being made on behalf of Collective Counsel only, without objection from Defendant.

class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Slaughter*, 2019 WL 529512, at *8 (citations omitted).

Here, Plaintiff worked with Collective Counsel providing valuable background information about her employment, about Defendant's policies and practices, and about the allegations in the lawsuit, and regularly conferred with Collective Counsel. She agreed to put her name on a lawsuit in the public docket, and by doing so, Collective Counsel believe she undertook a substantial direct and indirect risk in the community and in her field of employment by being the face of the litigation in order to participate in this case on behalf of her former fellow employees. Plaintiff spent a great amount of time assisting Collective Counsel with this matter, including providing information to Collective Counsel, responding to written discovery, and preparing and attending mediation. As a result of Plaintiff's active assistance in prosecuting this case, Settlement Collective members will receive a significant benefit in the form of monetary compensation for alleged unpaid wages. *See* Rodriguez Decl. ¶¶ 22-23.

This additional payment requested in this case is also in line with those approved in wage and hour collective and class actions in the Tenth Circuit. *See, e.g., Cazeau,* 2021 WL 1688540 at *8 (approving incentive awards of $12,500 to each of two lead plaintiffs and $2,500 to third lead plaintiff); *Slaughter*, 2019 WL 529512 at *8 (awarding $10,000 to named plaintiff, and smaller amounts to six additional opt-in plaintiffs, as "well within the range" of "reasonable" service awards); *Shaw v. Interthinx, Inc.*, No. 13-cv-01229, 2015 WL 1867861, at *9 (D. Colo. Apr. 22, 2015) (approving $10,000 incentive awards to each of the five named plaintiffs based on their actions in litigating the case); *Tuten v United Airlines, Inc.,* 41 F. Supp. 3d 1003, 1010 (D. Colo.

2014) (approving $15,000 service award to named plaintiff); *McNeely v. Nat'l Mobile Health Care*, LLC, NO. CIV-07-933-M, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (approving $15,000 service award).[14] Accordingly, the Incentive Payment to Plaintiff should be approved.

### E.    The Request for Collective Counsel's Fees Should Be Approved

Finally, Collective Counsel's request for attorney's fees of $583,333.33, or one-third of the Total Settlement Amount, as well as reimbursement of costs in the amount of $14,387.98 (Agreement ¶ B.6.a) is reasonable and should be approved. The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee…and costs of the action." *Blanco v. Xtreme Drilling & Coil Servs.*, Civ. A. No 16-cv-00249-PAB-SKC 2020 WL 4041456, at *4 (D. Col. Jul. 17, 2020) (citing *Gray v. Phillips Petroleum Co*., 971 F. 2d 591, 594 (10th Cir .1992) (quoting 29 U.S.C.§ 216(b)). The award of attorney's fees under § 216(b) is mandatory. *Gambrell v. Weber Carpet, Inc.,* No.10-2131-KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012) (citation omitted).

In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees…on a percentage-of-the-fund, rather than lodestar basis." *Blanco*, 2020 WL 4041456 at *4 (citing *Uselton v. Com. Lovelace Motor Freight, Inc*. 9 F. 3d 849, 854 (10th Cir 1993)). The percentage approach "is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel were

---

[14] Other courts have approved similar service awards in wage and hour settlements. *See, e.g,, Carr v. Bob Evans Farms, Inc.,* No. 1:17-cv-1875, 2018 WL 7508650, at * 3 (N.D. Ohio July 27, 2018) (approving $10,000 for each of two named plaintiffs); *Raniere v. Citigroup, Inc*., 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving $20,000, $15,000, and $7,500, respectively); *Swigart v. Fifth Third Bank* 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (approving incentive award of $10,000 to each named representative); *Creed v . Banco Dental Supply Co*., NO. 3:12-CV-01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (approving $15,000 for "risks" he took on behalf unnamed class members).

retained on a contingent fee basis." *Lucken Family Ltd. P'ship v. Ultra Res., Inc.,* No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010) (citing *Brown v. Phillips Petroleum Co.*, 838 F. 2d 451, 454 (10th Cir. 1998)).[15] Further, a negotiated fee is preferable because it prevents attorneys' fees from becoming a "second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Here, as part of the negotiations that led to the Settlement, Defendant agreed not to object to an award of $583,333.33 in attorneys' fees and reimbursement of out-of-pocket costs of $14,387.98. Agreement ¶ B.6.a.

In determining what constitutes a "reasonable" percentage fee award in the Tenth Circuit a district court considers the following factors: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Peterson v. Morg. Sources, Corp.,* No. 08-2660-KHV, 2011 WL 379363, at *9 (D. Kan Aug. 25, 2011) (citing *Gottlieb v. Barry,* 43 F. 3d 474, 483 (10th Cir. 1994) (citing *Johnson v. Ga. Highway Express*, Inc., 488 F. 2d 714, 717-19 (5th Cir. 1974). The court need not consider every single *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F. 3d 1074, 1083 (10th Cir. 1998). Application of these factors supports

---

[15] *See also Peterson v. Mortg. Sources*, Corp. No. 08-2660-KHV, 2011 WL 3793963, at *12 (D. Kan. Aug 25, 2011) ("This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions").

approval of the requested fee in this case.

### 1.    Time and Labor Required

Prosecuting this case to a successful settlement for the benefit of the Settlement Collective required Collective Counsel to expend a significant amount of time, including time spent conducting substantial legal and factual research, attending a full-day (virtual) mediation, engaging in numerous settlement negotiations, and finalizing the Settlement Agreement. Although the Court does not evaluate the fee under the lodestar method (*see Uselton,* 9 F. 3d at 853), Collective Counsel notes that they spent a total of more than 544.9 hours working on this matter from the time the case was brought in April 2020, for an aggregate lodestar of $280,175.50. *See* Rodriguez Decl. ¶¶ 26, 30-32, Ex. B; Schalman-Bergen Decl. ¶¶ 16-17.  The requested $583,333.33 thus reflects a multiplier of 2.08 times the total lodestar amount, which is in the range of lodestar multipliers approved by courts in common fund settlements in this Circuit. Rodriguez Decl. ¶ 33. *See in re Qwest Commc'ns.,* 625 F. Supp. 2d at 1151 ("[C]ounsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure."); *Blanco*, 2020 WL 4041456, at * 7 (approving fee amounting to 2.55 multiplier as "reasonable").[16] This lodestar does not include the additional work that will be necessary to bring this settlement to a conclusion, including overseeing the administration of the settlement.

---

[16] Because of the time and labor required to prosecute this FLSA case, Collective Counsel were "precluded by the ticking of the clock from taking certain other cases given that they [had] decided to take a chance on a possible recovery in a contingent fee case." *Whittington v. Taco Bell of Amer.* No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov 13, 2013). Thus, the "preclusion of other employment" *Johnson* factor also supports approval of the requested fee. *Id.*

2.      **Novelty and Difficulty of Question Presented by the Case, Skill Required to Perform the Legal Service Properly, and Experience of Collective Counsel**

In this case, the Parties agreed that there are numerous disputed issues of fact and law, including, whether Plaintiff and the Settlement Collective members were misclassified as exempt employees and therefore not entitled to overtime compensation. Defendant would also contest the number of alleged overtime hours worked. Defendant also denied that the potential Settlement Collective members were "similarly situated" and Plaintiff would therefore face barriers in attaining and maintaining a collective.  Thus, an outcome of zero recovery for the Plaintiff and Settlement Collective remained possible. Collective Counsel accepted these risks, diligently prosecuted the case, and ultimately negotiated a substantial recovery.

The wage and hour issues in this litigation are governed by highly technical and constantly-evolving federal FLSA law and regulations. *Genesis Healthcare*, 569 U.S, at 74 (noting that FLSA collective actions are "fundamentally different" from typical class actions). As evidenced by their Declarations, Collective Counsel focus their practices on and have extensive experience in representing workers in wage and hour litigation nationwide, including class and collective actions. *See* Rodriguez Decl. ¶¶ 2-5, Ex. A; Schalman-Bergen Decl. ¶ 3-12.  Counsel have demonstrated their ability by achieving excellent results for the Settlement Collective in this case. The "skill" and "experience" factors therefore weigh in favor of the requested fee award.

3.      **Customary Fee and Awards in Similar Cases and Whether the Fee is Fixed or Contingent**

Collective Counsel seek a contingent fee of $583,333.33, which is one-third of the Total Settlement Amount. This is well within the percentage range approved by courts in this district and Circuit in similar cases. "The customary fee award to class counsel in a common fund

settlement is approximately one-third of the total economic benefit bestowed on the class." *Lucken Family Ltd. P'ship,* 2010 WL 5387559 at \*5-6; *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc*., No. 2:02-CV-950, 2014 WL 3943994, at \*2 (D. Utah June 19, 2014) (approving fee award of 33.3% of settlement fund); *Blanco*, 2020 WL 4041456, at \* 5 (awarding attorney's fees and costs amounting to 38% of total settlement amount as "in line with customary fees and awards in similar [wage and hour] cases"); *Davis*, 292 F. Supp. 3d at 1174 (finding award equal to 37% of gross settlement amount to be "well within the normal range for a contingent fee award"); *Tennille v. W. Union Co.,* No. 09-cv-00938-JLK-KMT, 2013 WL 6920449, at \*11 (D. Colo. Dec. 31, 2013) (awarding class counsel fee of 35% of common fund). *See also Henry v. Little Mint, Inc.,* No. 12-cv -3966, 2014 WL 2199427, at \*15 (S.D.N.Y. May 23, 2014) (noting that courts around the country have "routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases") (collecting cases).[17] Thus, the customary fee factor and award in similar cases supports the requested fee award.

Moreover, the fact that Collective Counsel agreed to represent Plaintiff and the proposed Settlement Collective on a contingent basis supports approval of the requested fee. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates…yet they are willing to pay a portion of any recovery they may

---

[17] *See also Whittington v. Taco Bell of Am., Inc.,* No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at \*6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Chieftain Royalty Co. v. Laredo Petroleum, Inc*., 2015 WL 2254606, at \*3 (W.D. Okla. May 13, 2015) ("An award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases."); *Shaw v. Interthinx, Inc*., No. 13-cv-01229,-REB-NYW 2015 WL 1867861, at \* 6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within 20-50% range are "presumptively reasonable.").

receive in return for successful representation." *Shaw v. Interthinx, Inc*., No. 13-cv-01229-REB, 2015 WL 1867861, at *7 (D. Colo. Apr. 22, 2015) (citing *Wells v. Sullivan*, 907 F. 2d 367, 371 (2d Cir. 1990)). "Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of a requested fee award." *Blanco*, 2020 WL 4041456, at *6 (collecting cases). By permitting clients to obtain attorneys without having to pay hourly fees, contingent fee arrangements provide critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. In this case, Collective Counsel would not have recovered any of their fees or out-of-pocket costs if they had not obtained a settlement or prevailed at trial. The significant investment of time and financial resources and the risk of nonpayment also relates to the undesirability of the case. *See Qwest*, 625 F. Supp. 2d at 1152-53 ("At bottom, the risk to [class counsel] was financial. Most attorneys are unable or unwilling to take such a financial risk."). Collective Counsel's contingency risk, together with the excellent result achieved on behalf of the Settlement Collective weigh in favor of approval of the requested fees and costs. *See* Rodriguez Decl. ¶¶ 24-25.

### 4.    Any Time Limitations Imposed By the Client or Circumstances

The FLSA provides a maximum three-year statute of limitations on claims. *See* 29 U.S.C. § 255(a). The statute of limitations for the FLSA claims of potential opt-in plaintiffs is not tolled by the filing of a plaintiff's complaint, but rather by the opt-in plaintiff filing his/her written consent with the court. *See Stransky v. HealthONE of Denver, Inc.,* 868 F. Supp. 2d 1178, 1181-82 (D. Colo. 2012). In this case, Collective Counsel filed Plaintiff Abernathy's Complaint on April 23, 2020, thereby ceasing the running of Plaintiff's statute of limitations, but not the potential

Settlement Collective members.[18] On February 1, 2021, approximately nine months after Plaintiff filed her Complaint, the Court approved the Parties' joint motion to stay the case in order to discuss early mediation. (Dkt, No. 40.) This allowed the Parties to fully engage in a good faith early mediation and reach this Settlement. *See* Rodriguez Decl. ¶ 12.

### 5.    Amount Involved and Results Obtained

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Blanco*, 2020 WL 4041456, at *6 (citing *Farrar v. Hobby,* 506 U.S. 103, 114 (1992). Here, the Total Settlement Amount of $1,750,000.00 is an excellent recovery for the approximately 136 Settlement Collective members in view of the difficulties and risks that plaintiffs face in any complex wage and hour litigation to prevail on the merits and to obtain and maintain certification of a collective. Here, for example, Defendant was prepared to argue that HEDIS Reviewers, such as Plaintiff, are covered by one or more FLSA exemptions and are therefore ineligible to receive overtime compensation. Among other things, Defendant also disputed the average number of hours worked by HEDIS Reviewers. As determined by Defendant's personnel and payroll records, the Total Settlement Amount is based on an examination of each Collective Member's workweeks during which they worked for Defendant at any time between April 23, 2017 and March 13, 2021. The Total Settlement Amount is, in Collective Counsel's assessment, a negotiated amount that falls between Defendant's calculated potential exposure and Plaintiff's calculated potential damages. *See* Rodriguez Decl. ¶ 17. *See Brown*, 838 F. 2d at 456 (results obtained by settlement "may be given greater weight [in the

---

[18] Plaintiff Wall ceased the running of her statute of limitations when she filed her opt-in consent form pursuant to FLSA Section 216(b) on June 9, 2020. (Dkt. No. 35).

26

*Johnson* analysis] when the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class"). Thus, the "amount involved and results obtained" factor supports approval of the requested fee award.

### F.    Collective Counsel's Costs Should Be Approved

In addition to reasonable attorneys' fees, the FLSA provides for reimbursement of "costs of the action." *See* 29 U.S.C. §216(b). *See Tuten v. United Airlines, Inc.,* 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("[A]n attorney who creates…. a common fund for the benefit of the class is entitled to receive reimbursement of all reasonable costs incurred."). Collective Counsel seeks reimbursement of costs totaling $14,427.28, which are detailed in Collective Counsel's accompanying Declarations. Rodriguez Decl. ¶¶ 35-36; Schalman-Bergen Decl. ¶ 24. These costs include reasonable out-of-pocket expenditures. The expenses reflected in the accompanying Declarations are of the type typically billed by attorneys to paying clients, and include court costs, computerized legal research, and mediation fees. All expenses were reasonable and necessary for the prosecution of this litigation. *See, e.g., Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D. N.J. 2004) (finding similar types of expenses to be reasonable). Collective Counsel advanced these costs, with the significant likelihood of no recovery. These costs should be approved as reasonable.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that the Court grant this Motion and enter the accompanying Proposed Order.

Dated: September 13, 2021

BERGER MONTAGUE PC

/s/ Camille Fundora Rodriguez
Camille Fundora Rodriguez
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
sschalman-bergen@bm.net
crodriguez@bm.net
kconnon@bm.net

Harold L. Lichten
Sarah Schalman-Bergen
Krysten L. Connon
Anastasia Doherty
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
ssb@llrlaw.com
kconnon@llrlaw.com
adoherty@llrlaw.com

Elizabeth M. Peck (USB 6304)
**PECK-LAW, Employment & Civil Rights**
111 N. Market St., Ste. 300
San Jose, California 95113
408-478-3555
lisa@peck-law.com

*Attorneys for Plaintiff and the Proposed
Collective*

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ Cheryl D. Orr
CHERYL D. ORR
cheryl.orr@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
LLP**
Four Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone: +1 415 591 7500
Facsimile: +1 415 591 7510

GREGORY P. ABRAMS
gregory.abrams@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
LLP**
311 S. Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: +1 312 212 6500
Facsimile: +1 312 212 6501

JILL A. ZENDER (UBN 5654)
jill.zender@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
LLP**
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone: +1 303 607 3500
Facsimile: +1 303 607 3600

KATRINA WALASIK FORSYTH
katrina.forsyth@faegredrinker.com
KRISTIN M. HALSING
kristin.halsing@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
LLP**
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: +1 310 203 4000
Facsimile: +1 310 229 1285

*Attorney for Defendant*

28